**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| **CHARLES W. HUNT,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Civil Action No. 3:10-cv-01104** |
| **v.** | ) | **Judge Nixon/ Knowles** |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | |
| **Commissioner of Social Security** | ) | |
| | ) | |
| **Defendant.** | ) | |

## REPORT AND RECOMMENDATION

This is a civil action filed pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), to obtain

judicial review of the final decision of the Commissioner of Social Security finding that Plaintiff

was not disabled and denying Plaintiff Disability Insurance Benefits ("DIB") and Supplemental

Security Income ("SSI"), as provided under the Social Security Act ("the Act"), as amended.

The case is currently pending on Plaintiff's Motion for Judgment on the Administrative Record.

Docket No. 12. Defendant has filed a Response, arguing that the decision of the Commissioner

was supported by substantial evidence and should be affirmed. Docket No. 15. Plaintiff

subsequently filed a Reply. Docket No. 16.

For the reasons stated below, the undersigned recommends that Plaintiff's Motion for

Judgment on the Administrative Record be DENIED, and that the decision of the Commissioner

be AFFIRMED.

## I. INTRODUCTION

Plaintiff protectively filed his applications for DIB and SSI on March 24, 2008, alleging

that he had been disabled since February 5, 2007, due to depression, diabetes, high blood

1

pressure, and pain on his right side. Docket No. 10, Attachment ("TR"), TR 10, 128, 131, 161.

Plaintiff's applications were denied both initially (TR 47, 48) and upon reconsideration (TR 50, 51). Plaintiff subsequently requested (TR 69) and received (TR 100) a hearing. Plaintiff's hearing was conducted on January 20, 2010, by Administrative Law Judge ("ALJ") Barbara Kimmelman. TR 22. Plaintiff and vocational expert ("VE"), Jane Brenton appeared and testified. *Id.*

On February 10, 2010, the ALJ issued a decision unfavorable to Plaintiff, finding that Plaintiff was not disabled within the meaning of the Social Security Act and Regulations. TR 7-17. Specifically, the ALJ made the following findings of fact:

1. The claimant meets the insured status requirements of the Social Security Act through June 30, 2011.

2. The claimant has not engaged in substantial gainful activity since April 14, 2008, the amended alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The claimant has the following severe impairments: diabetes mellitus; varicose veins; a depressive disorder; and alcohol abuse (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following limitations: he can sit, stand, or walk for six hours each in an eight-hour workday; he must have the ability to change positions every 30 minutes, at will; and he is limited to the performance of simple and detailed tasks.

2

6. The claimant is capable of performing past relevant work as a security guard. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).

7. The claimant has not been under a disability, as defined in the Social Security Act from April 14, 2008 through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

TR 12-17.

On April 2, 2010, Plaintiff timely filed a request for review of the hearing decision. TR 6. On September 22, 2010, the Appeals Council issued a letter declining to review the case (TR 1-3), thereby rendering the decision of the ALJ the final decision of the Commissioner. This civil action was thereafter timely filed, and the Court has jurisdiction. 42 U.S.C. §§ 405(g) and 1383(c)(3). If the Commissioner's findings are supported by substantial evidence, based upon the record as a whole, then these findings are conclusive. *Id.*

## II. REVIEW OF THE RECORD

The parties and the ALJ have thoroughly summarized and discussed the medical and testimonial evidence of Record. Accordingly, the Court will discuss those matters only to the extent necessary to analyze the parties' arguments.

## III. CONCLUSIONS OF LAW

### A. Standards of Review

This Court's review of the Commissioner's decision is limited to the record made in the administrative hearing process. *Jones v. Secretary*, 945 F.2d 1365, 1369 (6th Cir. 1991). The purpose of this review is to determine (1) whether substantial evidence exists in the record to support the Commissioner's decision, and (2) whether any legal errors were committed in the

process of reaching that decision.  *Landsaw v. Secretary*, 803 F.2d 211, 213 (6th Cir. 1986).

"Substantial evidence" means "such relevant evidence as a reasonable mind would accept as adequate to support the conclusion."  *Her v. Commissioner*, 203 F.3d 388, 389 (6th Cir. 1999) (*citing Richardson v. Perales*, 402 U.S. 389, 401 (1971)).  "Substantial evidence" has been further quantified as "more than a mere scintilla of evidence, but less than a preponderance." *Bell v. Commissioner,* 105 F.3d 244, 245 (6th Cir. 1996) (*citing Consolidated Edison Co. v. N.L.R.B.,* 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938)).

The reviewing court does not substitute its findings of fact for those of the Commissioner if substantial evidence supports the Commissioner's findings and inferences.  *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).  In fact, even if the evidence could also support a different conclusion, the decision of the Administrative Law Judge must stand if substantial evidence supports the conclusion reached.  *Her*, 203 F.3d at 389 (*citing Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).  If the Commissioner did not consider the record as a whole, however, the Commissioner's conclusion is undermined.  *Hurst v. Secretary*, 753 F.2d 517, 519 (6th Cir. 1985) (*citing Allen v. Califano,* 613 F.2d 139, 145 (6th Cir. 1980) (*citing Futernick v. Richardson,* 484 F.2d 647 (6th Cir. 1973)).

In reviewing the decisions of the Commissioner, courts look to four types of evidence: (1) objective medical findings regarding Plaintiff's condition; (2) diagnosis and opinions of medical experts; (3) subjective evidence of Plaintiff's condition; and (4) Plaintiff's age, education, and work experience.  *Miracle v. Celebrezze*, 351 F.2d 361, 374 (6th Cir. 1965).

## B.  Proceedings At The Administrative Level

The claimant carries the ultimate burden to establish an entitlement to benefits by

proving his or her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "Substantial gainful activity" not only includes previous work performed by Plaintiff, but also, considering Plaintiff's age, education, and work experience, any other relevant work that exists in the national economy in significant numbers regardless of whether such work exists in the immediate area in which Plaintiff lives, or whether a specific job vacancy exists, or whether Plaintiff would be hired if he or she applied. 42 U.S.C. § 423(d)(2)(A).

At the administrative level of review, the claimant's case is considered under a five-step sequential evaluation process as follows:

> (1) If the claimant is working and the work constitutes substantial gainful activity, benefits are automatically denied.
>
> (2) If the claimant is not found to have an impairment which significantly limits his or her ability to work (a "severe" impairment), then he or she is not disabled.
>
> (3) If the claimant is not working and has a severe impairment, it must be determined whether he or she suffers from one of the "listed" impairments[1] or its equivalent. If a listing is met or equaled, benefits are owing without further inquiry.
>
> (4) If the claimant does not suffer from any listing-level impairments, it must be determined whether the claimant can return to the job he or she previously held in light of his or her residual functional capacity (e.g., what the claimant can still do despite his or her limitations). By showing a medical condition that prevents him or her from returning to such past relevant work, the claimant establishes a *prima facie* case of disability.
>
> (5) Once the claimant establishes a *prima facie* case of disability,

---

[1]The Listing of Impairments is found at 20 CFR, Pt. 404, Subpt. P, App. 1.

> the burden shifts to the Commissioner to establish the claimant's
> ability to work by proving the existence of a significant number of
> jobs in the national economy which the claimant could perform,
> given his or her age, experience, education, and residual functional
> capacity.

20 CFR §§ 404.1520, 416.920 (footnote added).  *See also Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

The Commissioner's burden at the fifth step of the evaluation process can be satisfied by relying on the medical-vocational guidelines, otherwise known as "the grid," but only if the claimant is not significantly limited by a nonexertional impairment, and then only when the claimant's characteristics identically match the characteristics of the applicable grid rule. Otherwise, the grid cannot be used to direct a conclusion, but only as a guide to the disability determination.  *Id.*  In such cases where the grid does not direct a conclusion as to the claimant's disability, the Commissioner must rebut the claimant's *prima facie* case by coming forward with particularized proof of the claimant's individual vocational qualifications to perform specific jobs, which is typically obtained through vocational expert testimony.  *See Varley v. Secretary*, 820 F.2d 777, 779 (6th Cir. 1987).

In determining residual functional capacity for purposes of the analysis required at stages four and five above, the Commissioner is required to consider the combined effect of all the claimant's impairments; mental and physical, exertional and nonexertional, severe and nonsevere.  *See* 42 U.S.C. § 423(d)(2)(B).

### C.  Plaintiff's Statement Of Errors

Plaintiff contends that the ALJ erred in: 1) not according controlling weight to Plaintiff's

treating physician's opinion; 2) failing to consider Plaintiff's subjective complaints of pain;

3) improperly evaluating Plaintiff's mental conditions and limitations; 4) failing to consider all

relevant evidence; 5) failing to properly evaluate the effects of Plaintiff's obesity; 6) improperly

determining Plaintiff's residual functional capacity ("RFC"); 7) improperly determining that

Plaintiff can perform his past relevant work; 8) improperly relying on the VE's testimony; and

9) failing to find Plaintiff disabled under the Grid. Docket No. 12-1. Accordingly, Plaintiff

maintains that, pursuant to 42 U.S.C. § 405(g), the Commissioner's decision should be reversed,

or in the alternative, remanded. *Id.*

Sentence four of § 405(g) states as follows:

> The court shall have power to enter, upon the pleadings and
> transcript of the record, a judgment affirming, modifying, or
> reversing the decision of the Commissioner of Social Security,
> with or without remanding the cause for a rehearing.

42 U.S.C. §§ 405(g), 1383(c)(3).

"In cases where there is an adequate record, the Secretary's decision denying benefits can

be reversed and benefits awarded if the decision is clearly erroneous, proof of disability is

overwhelming, or proof of disability is strong and evidence to the contrary is lacking." *Mowery*

*v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985). Furthermore, a court can reverse the decision and

immediately award benefits if all essential factual issues have been resolved and the record

adequately establishes a plaintiff's entitlement to benefits. *Faucher v. Secretary*, 17 F.3d 171,

176 (6th Cir. 1994). *See also Newkirk v. Shalala*, 25 F.3d 316, 318 (6th Cir. 1994).

## 1.  Weight Accorded to Opinion of Plaintiff's Treating Physician

Plaintiff maintains that the ALJ erred in not giving controlling weight to the findings of

Keith Junior, M.D., his treating physician. Docket No. 12-1. Specifically, Plaintiff maintains

7

that the ALJ wrongfully rejected Dr. Junior's diagnoses of type II diabetes mellitus and chronic neuropathy. *Id.* Plaintiff further maintains that the ALJ improperly substituted her own judgment for that of Dr. Junior regarding the neuropathy diagnosis. *Id.* Plaintiff also asserts that the ALJ accorded improper weight to the opinions of the State agency medical consultants when she determined that Plaintiff's hypertension and hyperlipidemia were not severe impairments. *Id.*

Defendant responds that Dr. Junior did not provide a Medical Source Statement or other opinion regarding the extent to which Plaintiff's diagnosed impairments (specifically neuropathy) would affect his ability to work. Docket No. 15. Defendant contends that the ALJ properly determined that the record established no significant restrictions of motor function. *Id.* Defendant also contends that the ALJ did, in fact, consider Dr. Junior's diagnoses, and noted that Dr. Junior had most recently found Plaintiff's diabetes and hypertension to be "controlled." *Id.* Defendant further notes that Dr. Junior did not diagnose or treat Plaintiff for toe pain, nor did he prescribe anything to alleviate Plaintiff's alleged leg pain. *Id.* Defendant highlights that Dr. Junior opined that Plaintiff's "complaint of toe pain or varicose veins . . . do not necessarily aide [h]is quest to get disability [benefits]." *Id.*, *citing* TR 271. Finally, Defendant argues that the ALJ accorded proper weight to the opinions of the State agency medical consultants regarding the severity of Plaintiff's hypertension and hyperlipidemia.[2]

Plaintiff, in his Reply, reiterates his assertion that the ALJ should have accorded Dr. Junior's opinion greater weight. Docket No. 16.

---

[2]Defendant also responds that it is solely the ALJ's responsibility to determine Plaintiff's RFC. Docket No. 15. This argument will be addressed in detail, *infra*.

With regard to the evaluation of medical evidence, the Code of Federal Regulations

states:

> Regardless of its source, we will evaluate every medical opinion we receive. Unless we give a treating source's opinion controlling weight under paragraph (d)(2) of this section, we consider all of the following factors in deciding the weight we give to any medical opinion.
>
> (1) Examining relationship. Generally, we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you.
>
> (2) Treatment relationship. Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques *and is not inconsistent with the other substantial evidence in your case record*, we will give it controlling weight. When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (d)(2)(i) and (d)(2)(ii) of this section, as well as the factors in paragraphs (d)(3) through (d)(6) of this section in determining the weight to give the opinion. ...
>
> (3) Supportability. The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion. ...
>
> (4) Consistency. Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion.
>
> (5) Specialization. We generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist.
> ...

20 CFR § 416.927(d) (emphasis added). *See also* 20 CFR § 404.1527(d).

If the ALJ rejects the opinion of a treating source, she is required to articulate some basis

9

for rejecting the opinion. *Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987). The Code of Federal Regulations defines a "treating source" as:

> [Y]our own physician, psychologist, or other acceptable medical source who provides you or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you.

20 CFR § 404.1502.

As a preliminary matter, the ALJ did not reject Dr. Junior's opinion regarding Plaintiff's ability to work, because Dr. Junior failed to render an opinion on the matter. *See* TR 12-17. Significantly, the record does not include a Medical Source Statement from Dr. Junior expressing an opinion regarding Plaintiff's ability to work (*see* TR 41), and Dr. Junior's treatment notes likewise do not contain an expressed opinion that Plaintiff is unable to work (*see, e.g.*, TR 15, 265-74). Additionally, regarding Plaintiff's contention that pain in his toe, pain in his leg, and varicose veins provide the basis for his disability claim, Dr. Junior, in his treatment notes, indicated that these complaints have not been "prime" and "do not necessarily aide [Plaintiff's] quest for disability." TR 15, 271.

The ALJ in the case at bar thoroughly analyzed Dr. Junior's diagnoses, including hypertension, hyperlipidemia, neuropathy, and type II diabetes mellitus, stating:

> The claimant has also been diagnosed with hypertension. His doctor suggests that this condition is aggravated by stress. The claimant testified that this condition is not controlled, but his medical records indicate that, at least as of the most recent record from December 16, 2009, it is in fact controlled. However, there is no evidence of end organ damage as a result [of] his hypertension. The claimant also has chronic and uncontrolled hyperlipidemia. The claimant did not testify regarding specific limitations from these conditions. Therefore, his hypertension and hyperlipidemia are not considered to be severe impairments, which is supported by opinions from State agency consultants.

10

The record includes the mention of neuropathy once as a diagnosis in December 2009, but there is no objective evidence to support the diagnosis. The record does not establish the presence of neuropathy demonstrated by significant and persistent disorganization of motor function in two extremities resulting in sustained disturbance of gross and dexterous movements, or gait and station (see listing 11.00C); acidosis occurring at least on the average of once every 2 months documented by appropriate blood chemical tests (pH of pC02 or bicarbonate levels); or retinitis proliferans satisfying the criteria in listing 2.02. Therefore, the claimant's diabetes mellitus fails to satisfy the required level of severity for listing 9.08.

. . .

The claimant has been diagnosed with type II diabetes mellitus. He stated that he experiences frequent urination, but there was never any specific complaint of frequent urination, and no diagnosis or treatment for frequent urination. His treatment records from United Neighborhood Health Services indicate that his diabetes condition has generally been either fairly controlled or controlled. There is insufficient evidence to show that his diabetes significantly limits his ability to perform basic work activities.

He testified regarding burning in his leg and foot. The treatment record shows he has complained of burning, but he has also denied it at subsequent office visits. The claimant's treatment record includes a diagnosis of "neuropathy," but it does not show up as a diagnosis until December 16, 2009, and there is no evidence of any diagnostic testing to confirm the diagnosis.

TR 13-15, *citing* 229-36, 266, 268-69, 271, 273 (internal citations omitted).

As the above indicates, the ALJ properly considered Dr. Junior's diagnoses and weighed them against the objective medical evidence in the record. As the Regulations state, the ALJ is not required to give controlling weight to a treating physician's evaluation when that evaluation is unsupported by, or inconsistent with, other substantial evidence in the record. *See* 20 CFR § 416.927(d)(2) and 20 CFR § 404.1527(d)(2). As can be seen, the ALJ largely accepted Dr. Junior's diagnoses regarding Plaintiff's impairments, and she articulated her rationale for not

11

accepting the neuropathy diagnosis, explaining that she did not accept it because it appeared only once late in Plaintiff's treatment history and there was no objective evidence to support the diagnosis. *See* TR 13-15. Accordingly, the Regulations do not mandate that the ALJ accord all of Dr. Junior's diagnoses controlling weight.

Contrary to Plaintiff's assertion that the ALJ improperly substituted her own subjective medical judgment for that of Dr. Junior, as can be seen from the quoted passages above, the ALJ in fact relied on the objective evidence of record to support her conclusion. The ALJ did not impose her subjective medical opinion that Plaintiff did not suffer from neuropathy; rather, the ALJ determined that there was insufficient objective medical evidence to support Plaintiff's claim that this impairment limited his ability to work. *See* TR 12-17. This determination was within the ALJ's province.

Moreover, the fact that the ALJ accepted Plaintiff's diagnoses of hypertension, hyperlipidemia, and type II diabetes mellitus does not necessitate a determination that Plaintiff is disabled. The existence of an impairment alone is insufficient to establish disability. 20 CFR §§ 404.1520, 416.920. As previously explained, Plaintiff must show that his impairments meet or medically equal listed impairments or that these impairments limit his ability to work. *Id.* As the ALJ articulated above, despite Plaintiff's diagnoses, he has not shown either that he meets or equals a listing or that these impairments affect his ability to work. *See* TR 13-15. Dr. Junior did not provide an opinion or Medical Source Statement suggesting otherwise.

Regarding Plaintiff's argument that the ALJ improperly relied on the opinions of the State agency medical consultants, the law is well-settled that an ALJ may consider the opinion of a non-examining physician designated by the Secretary in determining whether a claimant has

medically determinable impairments. *Reynolds v. Secretary*, 707 F.2d 927, 930 (6th Cir. 1983). In the instant case, the ALJ properly evaluated the State agency physicians' opinions under the criteria set forth above. The ALJ explained:

> The State agency medical consultants' physical assessment[s], that the claimant has no severe physical impairments, are afforded little weight, as they are not consistent with the record as a whole, including evidence received at the hearing level. However, the limitations resulting from the physical impairments, singly and in combination, do not significantly limit the claimant's ability to perform work activity.

TR 16, *citing* TR 203-06, 258-62, 263-64 (internal citations omitted).

As can be seen, the ALJ analyzed the State agency physicians' opinions, and actually accorded little weight to their opinions that Plaintiff did not suffer from any severe physical impairments. As will be discussed in greater detail *infra*, it does not follow from the ALJ's conclusion, however, that *all* of Plaintiff's physical impairments are severe, or that because Plaintiff has severe physical impairments, he is disabled under the Act and Regulations. The ALJ properly weighed the evidence of record and reached a reasoned decision regarding the weight to be accorded to the opinion evidence. The Regulations do not require more.

Because ALJ properly considered the opinion evidence of record, Plaintiff's argument fails.

## 2. Subjective Complaints of Pain

Plaintiff contends that the ALJ did not appropriately address his complaints of pain and physical limitations and therefore failed to comply with SSR 96-7p and 20 CFR §§ 404.1592 and 416.929. Docket No. 12-1. Plaintiff argues that the record shows that he has complained of

13

chronic pain for years, resulting in significant and documented symptoms. *Id.* Specifically, Plaintiff complains that the ALJ overlooked the alleged side effects of his diabetes and neuropathy, the side effects of his medication, his fatigue, his obesity, his daily need to keep his foot elevated for 30 minutes at a time, and his walking limitations. *Id.* As support for his contention, Plaintiff relies on Dr. Junior's treatment notes. *Id.* Plaintiff also argues that his activities of daily living do not necessarily imply that he has the ability to engage in substantial gainful activity. *Id.* Plaintiff maintains that his good work record adds credibility to his subjective complaints. *Id.*

Defendant responds that the ALJ properly considered Plaintiff's credibility and subjective complaints. Docket No. 15. Defendant argues that the description of Plaintiff's daily activities contradicts his testimony regarding his limited ability to stand and walk, as well as his alleged necessity to keep his foot elevated. *Id.* Defendant highlights that Plaintiff admitted that he can drive despite his claim of blurred vision, and that Plaintiff did not receive any diagnosis or treatment for pain in his right leg and toe despite his claims of debilitating pain in those extremities. *Id.* Defendant additionally maintains that Plaintiff's allegations are not credible because Plaintiff admitted that he quit working because he was laid off, and he continued to seek employment afterwards. *Id.*

Plaintiff, in his Reply, reiterates that the ALJ improperly discounted his credibility. Docket No. 16.

The Sixth Circuit has set forth the following criteria for assessing a plaintiff's allegations of pain:

> [S]ubjective allegations of disabling symptoms, including pain,
> cannot alone support a finding of disability...[T]here must be

14

> evidence of an underlying medical condition *and* (1) there must be
> objective medical evidence to confirm the severity of the alleged
> pain arising from the condition *or* (2) the objectively determined
> medical condition must be of a severity which can reasonably be
> expected to give rise to the alleged pain.

*Duncan v. Secretary*, 801 F.2d 847, 853 (6th Cir. 1986) (*quoting* S. Rep. No. 466, 98th Cong., 2d

Sess. 24) (Emphasis added); *see also* 20 CFR §§ 404.1529, 416.929 ("[S]tatements about your

pain or other symptoms will not alone establish that you are disabled...."); and *Moon v. Sullivan*,

923 F.2d 1175, 1182-83 ("[T]hough Moon alleges fully disabling and debilitating

symptomology, the ALJ, may distrust a claimant's allegations...if the subjective allegations, the

ALJ's personal observations, and the objective medical evidence contradict each other.").

Moreover, "allegations of pain...do not constitute a disability unless the pain is of such a

debilitating degree that it prevents an individual from engaging in substantial gainful activity."

*Bradley v. Secretary*, 862 F.2d 1224, 1227 (6th Cir. 1988).

When analyzing the claimant's subjective complaints of pain, the ALJ must also consider

the following factors and how they relate to the medical and other evidence in the record: the

claimant's daily activities; the location, duration, frequency and intensity of claimant's pain; the

precipitating and aggravating factors; the type, dosage and effect of medication; and the other

treatment or measures to relieve pain. *See Felisky v. Bowen*, 35 F.3d 1027, 1039 (6th Cir. 1994)

(*construing* 20 CFR § 404.1529(c)(2)). After evaluating these factors in conjunction with the

evidence in the record, and by making personal observations of the claimant at the hearing, an

ALJ may determine that a claimant's subjective complaints of pain and other disabling

symptoms are not credible. *See, e.g., Walters v. Commissioner,* 127 F.3d 525, 531 (6th Cir.

1997); *Blacha v. Secretary*, 927 F.2d 228, 230 (6th Cir. 1990); and *Kirk v. Secretary,* 667 F.2d

15

524, 538 (6th Cir. 1981).

In the case at bar, the ALJ found that Plaintiff's treatment record and daily activities did not support his subjective complaints of pain. TR 15-16. As the ALJ explained:

> [Plaintiff] testified regarding burning in his leg and foot. The treatment record shows he has complained of burning, but he had also denied it at subsequent office visits. The claimant's treatment record includes a diagnosis of "neuropathy," but it does not show up as a diagnosis until December 16, 2009, and there is no evidence of any diagnostic testing to confirm the diagnosis. Instead, the treatment record from that date indicates he complained of calf tenderness, and it was noted that he was a "patient with a long history of varicose veins." The claimant complained of problems stemming from varicose veins during the hearing. He has been noted to have varicose veins. They have been described as somewhere between trace and moderate in severity. His doctor suggests they have not been a particularly large concern when the claimant said that his toe pain and varicose veins were going to be the basis for his disability claim. Specifically, his treating physician noted on June 3, 2009, that the claimant's toe pain and varicose veins were not "prime" in the treatment notes and opined that these conditions would "not necessarily aid his quest for disability." The claimant has varicose veins, but the evidence reflects that they are "moderate" and do not significantly limit the claimant's ability to perform basic work activities.

> [Plaintiff] had been known to complain of right great toe pain. But there is no evidence of any diagnosis or treatment for his complaints, and the evidence does not suggest that this conditions [*sic*] lasted for a period of 12 continuous months. He suggested in his testimony that he needs to elevate his legs three or more times a day, and he went on to suggest that he needs to elevate his leg when he sits. However, there is nothing in the record to suggest that he has been instructed by his physician to do so. He also suggested that he can stand for less than 30 minutes at one time and walk for 20-25 minutes at one time. Because of his varicose veins, this was considered in the residual functional capacity.

TR 15, *citing* TR 266-68, 271, 273 (internal citations omitted).

As can be seen, the ALJ's decision specifically addresses not only the medical evidence,

16

but also Plaintiff's testimony and his subjective complaints, indicating that these factors were considered. TR 15. While Plaintiff relies on Dr. Junior's diagnoses of "significant, documented symptoms" as support for his subjective complaints (Docket No. 12-1), as has been explained above, the ALJ properly considered Dr. Junior's diagnoses and findings, and the ALJ is not bound to accept Dr. Junior's diagnoses as evidence of Plaintiff's credibility. It is clear from the ALJ's detailed articulated rationale that, although there is evidence which could support Plaintiff's claims, the ALJ chose to rely on medical findings that were inconsistent with Plaintiff's allegations. This is within the ALJ's province.

The ALJ, when evaluating the entirety of the evidence, is entitled to weigh the objective medical evidence against Plaintiff's subjective complaints of pain and reach a credibility determination. *See, e.g., Walters,* 127 F.3d at 531; and *Kirk v. Secretary,* 667 F.2d 524, 538 (6th Cir. 1981). An ALJ's findings regarding a claimant's credibility are to be accorded great weight and deference, particularly because the ALJ is charged with the duty of observing the claimant's demeanor and credibility. *Walters,* 127 F.3d at 531 (*citing Villarreal v. Secretary,* 818 F.2d 461, 463 (6th Cir. 1987)). Discounting credibility is appropriate when the ALJ finds contradictions among the medical reports, the claimant's testimony, the claimant's daily activities, and other evidence. *See Walters*, 127 F.3d at 531 (*citing Bradley,* 682 F.2d at 1227; *cf King v. Heckler*, 742 F.2d 968, 974-75 (6th Cir. 1984); and *Siterlet v. Secretary*, 823 F.2d 918, 921 (6th Cir. 1987)). If the ALJ rejects a claimant's testimony as not credible, however, the ALJ must clearly state the reasons for discounting a claimant's testimony (*see Felisky*, 35 F.3d at 1036), and the reasons must be supported by the record (*see King*, 742 F.2d at 975). As can be seen above, the ALJ articulated a detailed rationale for discounting Plaintiff's credibility, and explained that she

17

did so based on inconsistencies between his subjective complaints and the record as a whole. *See* TR 15.

After assessing all the objective medical evidence, the ALJ determined that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." TR 16. As has been noted, this determination is within the ALJ's province.

Plaintiff correctly states that a claimant's sporadic daily activities may not indicate what substantial gainful activity a claimant can do on a sustained basis. *See Cohen v. Secretary*, 964 F.2d 524 (6th Cir. 1992). In the context of determining Plaintiff's credibility, however, the ALJ properly considered the extent to which Plaintiff's daily activities reflected his alleged limitations. For example, the ALJ explained:

> The claimant has been diagnosed with a depressive disorder. However, there is relatively scant evidence regarding this condition, and he does not appear to be receiving treatment. He endorses activities of daily living which suggest relatively intact functioning, and indicates that he has lived alone for several years. The claimant also endorses leisure activities which require some level of concentration, such as reading and watching television.

TR 15-16, *citing* 202, 208, 267.

Moreover, Plaintiff's claim that his history of a good work ethic lends credibility to his subjective complaints is unavailing. Plaintiff does not explain how his work record is evidence of credibility in this context. In fact, Plaintiff testified at his hearing that not only did he quit working for reasons wholly unrelated to his alleged impairments, but he also testified that he continued to seek work after that point despite these alleged impairments. TR 27-28.

18

The ALJ observed Plaintiff during his hearing, assessed the medical records, and reached a reasoned decision; the ALJ's findings are supported by substantial evidence and the decision not to accord full credibility to Plaintiff's allegations was proper. Therefore, this claim fails.

### 3. Evaluating Plaintiff's Mental Conditions

Plaintiff contends that the ALJ failed to consider his borderline intellectual functioning in accordance with 20 CFR §§ 404.1520a, 404.1545(c), 416.920a, and 416.945(c).[3] Docket No. 12-1. Specifically, Plaintiff asserts that the ALJ's RFC determination is not supported by substantial evidence because it unjustifiably ignores all of the evidence in the record showing that Plaintiff's borderline intellectual functioning was a lifelong condition.[4] *Id.* Plaintiff maintains that the ALJ improperly discounted the effect of his depressive disorder because he was not receiving treatment, and Plaintiff argues that it was fundamentally unfair to determine that he is not disabled because he could not afford medical treatment for this impairment. *Id.* Again, Plaintiff argues that the ALJ failed to properly consider Dr. Junior's opinion. *Id.* Plaintiff additionally asserts that the ALJ incorrectly listed alcohol abuse among his severe impairments. *Id.*

Defendant responds that the ALJ properly recognized Plaintiff's mental limitations and determined that they only mildly restricted Plaintiff's ability to perform the functions of daily

---

[3] The undersigned notes that 20 CFR §§ 404.1545(c) and 416.945(c) apply to evaluating mental conditions in order to determine RFC, while 20 CFR §§ 404.1520a and 416.920a apply to determining disability generally and procedures to monitor the consultive examination, respectively. *See* 20 CFR §§ 404.1520a, 404.1545(c), 416.920a, and 416.945(c).

[4] Plaintiff also contends that the ALJ erred in not asking the VE whether Plaintiff's borderline intellectual functioning would affect his ability to work. Docket No. 15. The undersigned will address this statement of error in a following section.

19

living and social contact. Docket No. 15. Specifically, Defendant argues that the ALJ properly accorded great weight to the opinion of psychological examiner Robert N. Doran that Plaintiff was not then-currently suffering from depression and could perform both simple and detailed tasks over extended periods. *Id.* Defendant also argues that Plaintiff's intellectual capacity is not grounds for finding him disabled because Plaintiff engaged in substantial gainful activity as a security guard for years despite having borderline intellectual functioning. *Id.*

With regard to the evaluation of mental abilities in determining a claimant's Residual Functional Capacity, the Regulations state:

> When we assess your mental abilities, we first assess the nature and extent of your mental limitations and restrictions and then determine your residual functional capacity for work activity on a regular and continuing basis. A limited ability to perform certain mental activities, such as limitations in understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, co-workers, and work pressures in a work setting, may reduce your ability to do past work and other work.

20 CFR § 404.1545(c). *See also* 20 CFR § 416.945(c).

The ALJ analyzed the evidence of record regarding Plaintiff's intellectual functioning level in accordance with the Regulations:

> The [ALJ] affords the opinion of Mr. Doran significant weight. He indicates that the claimant is moderately limited in his ability to understand and remember, and his ability to sustain concentration and persistence. He also indicates that the claimant is mildly limited in his ability to interact with others, and his ability to adapt to changes or requirements. Similar weight is given to the State agency psychological consultant [Dr. Frank Kupstas'] opinion that the claimant is able to remember simple instructions and detailed instructions with some difficulty at times, and can sustain concentration, persistence, and pace sufficient for such instructions. These opinions are consistent with the record as a

20

whole.

TR 16, *citing* 209, 227.

As can be seen, the ALJ considered the findings of Mr. Doran and Dr. Kupstas and gave them significant weight. Contrary to Plaintiff's assertion, the ALJ did not reject the finding that Plaintiff is of "Borderline to Low Average intellectual functioning" (TR 16, 209), as the mental ability that the ALJ described above is consistent with this level of intellectual ability. Plaintiff's claim that the ALJ failed to consider Dr. Junior's findings in his RFC determination was discussed above and will not be recounted here.

Moreover, as has been previously explained, the ALJ properly discounted Plaintiff's complaints of depressive disorder because the record contained "scarce" evidence regarding this condition, and because Plaintiff's reported daily activities did not indicate the functional limitations he alleged. *See* TR 15-16. While Plaintiff is correct that the ALJ noted that Plaintiff was not receiving treatment for this condition, Plaintiff's lack of treatment was just one of several considered factors that the ALJ discussed when discounting the limiting effects of Plaintiff's depressive disorder. *See* TR 15-16. Thus, Plaintiff's argument that the ALJ unfairly relied on Plaintiff's lack of treatment for this condition when Plaintiff testified that he was uninsured and could not afford to seek treatment fails.

Plaintiff is correct that the ALJ listed alcohol abuse among Plaintiff's severe impairments. TR 12. The Regulations classify impairments as severe when they significantly limit the claimant's physical or mental ability to perform basic work activities. *See* 20 CFR §§ 404.1520(c) and 416.920(c). Regarding Plaintiff's alcohol abuse, the ALJ explained:

21

> [Plaintiff] does appear to have [had] an alcohol abuse problem in
> the past. However, the claimant indicates that he has been clean
> for a few years now, and nothing in the record suggests otherwise.

TR 16, *citing* TR 208.

The ALJ recognized that Plaintiff no longer abused alcohol, but considered that this past habit might have lingering effects on Plaintiff's physical and mental abilities. The ALJ did not, however, determine that this past history of alcohol abuse limited Plaintiff's RFC or in his ability to perform his past relevant work. TR 14-16. Because alcohol abuse was not a limiting factor in determining Plaintiff's RFC or his ability to perform his past relevant work, the ALJ's determination that this was a severe impairment did not bear on her finding that Plaintiff was not disabled. Therefore, the ALJ's decision must stand.

## 4. Considering Relevant Evidence

Plaintiff contends that the ALJ failed to consider and adequately analyze all of the relevant evidence in the record.[5] Docket No. 12-1. Specifically, Plaintiff cites various subjective complaints associated with his diabetes that he argues the ALJ did not properly address: chronic diabetes, chronic neuropathy, fatigue and shortness of breath related to a dyspnea diagnosis; burning in his lower right extremities related to a dsysesthsias diagnosis; standing limitations attributed to varicose veins; and frequent urination. *Id.*

Defendant responds that the ALJ properly considered each of Plaintiff's alleged

---

[5]Plaintiff argues that the ALJ's decision merely consists of boilerplate language. Docket No. 12-1. Plaintiff concedes that boilerplate language is not improper per se, and his argument focuses on the alleged lack of in-depth analysis in the ALJ's opinion. *Id.* Because Plaintiff does not take issue with the use of boilerplate language per se, the undersigned will focus on Plaintiff's contention that the ALJ's decision lacks in-depth analysis.

impairments. Docket No. 15. Specifically, Defendant argues that the ALJ properly found that Plaintiff's diabetes was controlled, and that this finding was consistent with the latest treatment notes from Dr. Junior. *Id.*

Plaintiff reiterates his arguments regarding the impairments listed above in his Reply. Docket No. 16.

As has been demonstrated through the quoted passages in the statements of error above, the ALJ properly considered Plaintiff's diabetes and diabetes-related impairments, neuropathy, burning in his lower right extremities, and varicose veins. *See* TR 13-16. As has also been previously explained, the ALJ properly considered Dr. Junior's findings and diagnoses, which included dyspnea and Plaintiff's reported shortness of breath, fatigue, and frequent urination. *See, e.g.*, TR 13-16, 234, 266-68. As has additionally been explained above, the ALJ properly assessed Plaintiff's subjective complaints. Because these arguments have been discussed above, the discussion of these arguments will not be repeated here.

Plaintiff also argues that the ALJ improperly stated that there were no specific complaints of frequent urination, because he had, in fact, reported this condition during several treatment visits. Docket No. 12-1, *citing* 236, 246, 266-72. The ALJ noted, "[Plaintiff] stated that he experiences frequent urination, but there was never any specific complaint of frequent urination, and no diagnosis or treatment for frequent urination." TR 15. While Plaintiff is correct that he complained about frequent urination during medical examinations (*see, e.g.*, 15, 236), the ALJ is correct that there was no diagnosis or treatment related to this impairment. The ALJ is further correct that nowhere in Plaintiff's DIB or SSI application materials did he specifically complain of frequent urination or indicate that this condition was preventing him from working. *See, e.g.*,

23

TR 15, 47-53, 128-32, 161.  The ALJ properly considered and analyzed the record with respect to Plaintiff's frequent urination, and substantial evidence supports the ALJ's determination that frequent urination did not limit Plaintiff's ability to work.  Accordingly, Plaintiff's argument fails.

## 5. Evaluating Plaintiff's Obesity

Plaintiff maintains that the ALJ failed to consider his obesity and its effect on his ability to work.  Docket No. 12-1.  Specifically, Plaintiff argues that the ALJ did not meet the requirements of SSR 02-1p because she failed to address either his obesity singularly or the combined impact of obesity and his other impairments.  *Id.*  Plaintiff highlights that treatment records indicate that his adult height was between 5 feet 8 inches and 5 feet 10 inches, and his weight has fluctuated between 205 and 220 pounds.  *Id.*  He further highlights that Dr. Junior noted that Plaintiff's abdomen was obese.[6]  *Id.*

Defendant responds that Plaintiff's obesity is irrelevant because neither Plaintiff nor any medical source cited any limitations resulting from Plaintiff's obesity.  Docket No. 15. Defendant notes that Plaintiff never alleged that his inability to work was attributed to obesity in any way.  *Id.*  Defendant also argues that Plaintiff's obesity is irrelevant because Plaintiff's height and weight were at their current levels when he last performed substantial gainful activity, and no treating source identified obesity as an impairment to his functional abilities.  *Id.*

Plaintiff is correct that when there is no diagnosis of obesity, as in the instant case, the

_____

[6]Plaintiff also argues that the ALJ erred in failing to request information from the VE regarding the additional limitations that Plaintiff's obesity imposed.  Docket No. 12-1.  The undersigned will address this statement of error in a following section.

24

Rulings charge the ALJ with using her "judgment to establish the presence of obesity based on the medical findings and other evidence in the case record, even if a treating or examining source has not indicated a diagnosis of obesity." SSR 02-1p. While Dr. Junior's treatment notes indicated on one occasion that Plaintiff had an obese abdomen (TR 237), there is no obesity diagnosis in the record. The ALJ had the benefit of observing Plaintiff at his hearing, analyzing Plaintiff's medical records, and considering Plaintiff's applications for DIB and SSI. Absent a diagnosis of obesity and absent any allegations that Plaintiff's weight affected his ability to work, Plaintiff's obesity does not render him disabled. Plaintiff's argument fails.

### 6. Residual Functional Capacity

Plaintiff contends that the ALJ erred in finding that he retained the RFC to perform a full range of work at all exertional levels. Docket No. 12-1. Specifically, Plaintiff argues that, pursuant to SSR 96-8p, the RFC must be based on all relevant evidence in the record, and also argues that the objective evidence supports a diagnosis of neuropathy, which precludes him from meeting the requirements of the RFC that the ALJ imposed. *Id.* Plaintiff reiterates his arguments that the ALJ failed to accord proper weight to Dr. Junior's opinion, failed to properly consider Plaintiff's mental limitations, failed to consider the full impact of his diabetes on his RFC, and ignored his subjective complaint that he needed to elevate his leg daily for 30 minute intervals. *Id.*

Defendant responds that it is solely the responsibility of the ALJ to determine Plaintiff's RFC. Docket No. 15, *citing* 20 CFR §§ 404.1546(c) and 416.946(c). Defendant reiterates his responses to Plaintiff's repeated arguments as described above. *Id.*

Plaintiff, in his Reply, again that the ALJ erred in determining his RFC. Docket No. 16.

"Residual Functional Capacity" is defined as the "maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs." 20 CFR Pt. 404, Subpt. P, App. 2 § 200.00(c). With regard to the evaluation of physical abilities in determining a claimant's Residual Functional Capacity, the Regulations state:

> When we assess your physical abilities, we first assess the nature and extent of your physical limitations and then determine your residual functional capacity for work activity on a regular and continuing basis. A limited ability to perform certain physical demands of work activity, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping or crouching), may reduce your ability to do past work and other work.

20 CFR § 404.1545(b).

The record in the case at bar is replete with objective and testimonial evidence, all of which was properly considered by the ALJ in determining Plaintiff's "residual functional capacity for work activity on a regular and continuing basis." The ALJ, after evaluating all of the objective medical evidence of record and Plaintiff's level of activity, determined that Plaintiff retained the Residual Functional Capacity to perform "a full range of work at all exertional levels but with the following limitations: he can sit, stand, or walk for six hours each in an eight-hour workday; he must have the ability to change positions every 30 minutes, at will; and he is limited to the performance of simple and detailed tasks." TR 14.

Plaintiff's challenges to this RFC determination are unavailing. As previously discussed, the ALJ properly considered all relevant medical evidence in this case. Specifically, as explained in great detail above, the ALJ did not err in her assessment of Plaintiff's neuropathy, mental limitations, diabetes, subjective complaints with respect to his need to elevate his leg and

26

otherwise, or Dr. Junior's findings.  The ALJ considered the evidence of record, reached a reasoned decision, and clearly articulated the basis for her RFC finding.  The Regulations do not require more.  Thus, the ALJ's decision must stand.

**7. Past Relevant Work**

Plaintiff contends that the ALJ erred in determining that he can perform his past relevant work as a security guard.  Docket No. 12-1.  Specifically, Plaintiff argues that work as a security guard would preclude him from elevating his leg and would require him to stand most of day.  *Id.*  Plaintiff cites the details of his previous security job, which included patrolling the grounds for 30-45 minutes each hour, as support for this contention.  *Id.*  Additionally, he maintains that the Dictionary of Occupational Titles ("DOT") description of work as a security guard[7] does not include the ability to change positions every 30 minutes, at will, which the ALJ determined was a specific limitation on Plaintiff's RFC.  *Id.*

While Defendant does not respond to this argument individually, he notes that Plaintiff's ability to perform past relevant work is not based on Plaintiff's particular past experiences performing such work, but is based on the general demands of that work as it is performed in the national economy.  Docket No. 15.  Defendant relies on 20 CFR §§ 404.960(b)(2)[8] and 404.1560(b)(2) to support his assertion.  *Id.*

---

[7]Plaintiff cites DOT Code 372.667-308, but quotes DOT Code 372.667-038.  The quoted material and section 372.667-038 correctly apply to Plaintiff's past relevant work as a security guard.

[8]20 CFR § 404.960 pertains to vacating a dismissal of a request for a hearing before an ALJ, while § 416.960(b)(2) is entitled "Determining whether you can do your past relevant work.  *See* 20 CFR §§ 404.960(b)(2) and 416.960(b)(2).

Upon reaching step four of the sequential evaluation process outlined above, the ALJ must determine whether a claimant can perform his past relevant work. The Regulations state:

> Determining whether you can do your past relevant work. We will ask you for information about work you have done in the past. We may also ask other people who know about your work. We may use the services of vocational experts or vocational specialists, or other resources, such as the "Dictionary of Occupational Titles" and its companion volumes and supplements, published by the Department of Labor, to obtain evidence we need to help us determine whether you can do your past relevant work, given your residual functional capacity. A vocational expert or specialist may offer relevant evidence within his or her expertise or knowledge concerning the physical and mental demands of a claimant's past relevant work, either as the claimant actually performed it or as generally performed in the national economy. Such evidence may be helpful in supplementing or evaluating the accuracy of the claimant's description of his past work. In addition, a vocational expert or specialist may offer expert opinion testimony in response to a hypothetical question about whether a person with the physical and mental limitations imposed by the claimant's medical impairment(s) can meet the demands of the claimant's previous work, either as the claimant actually performed it or as generally performed in the national economy.

20 CFR § 404.1560(b)(2). *See also* 20 CFR § 416.960(b)(2).

A claimant's ability to perform past relevant work does not depend on the demands of the particular job he previously held. *See Studaway v. Secretary*, 815 F.2d 1074, 1076 (6th Cir. 1987). Rather, a claimant must prove an inability to perform his former *type* of work rather than a specific former job. *Id.* (Emphasis added.) Therefore, while Plaintiff is correct that the particular duties of his past job as a security guard do not accommodate certain standing and positional limitations that the ALJ found (*see, e.g.*, TR 14, 29, 162), this does not establish that Plaintiff cannot perform work as a security guard as it is generally performed in the national economy. In fact, the VE testified that Plaintiff could return to his previous work as a security

28

guard:

> Q: Could I ask you to base your testimony on the Social
> Security regulations and the Dictionary of Occupational
> Titles, and if at any time your testimony is not consistent
> with the Dictionary of Occupational Titles, if you'll please
> note that and give us the basis of your opinion?
>
> A. Yes, Your Honor. [Plaintiff has] worked as a security guard
> since '88 to 2007; DOT code 372.667-038; light, low semi-
> skilled, SVP of three, no transferability.
>
> Q. I'm going to ask you to assume a hypothetical person of
> [Plaintiff's] age, education, and work background; and
> further assume that he has no lifting restrictions; that he can
> sit, stand or work for six hours each in an eight-hour
> workday, but he would need to be able to change positions
> at will every 30 minutes. Could such an individual perform
> any of his past work?
>
> A. Yes, Your Honor. He should be able to return to his, the
> work as a security guard.
>
> . . .
>
> Q. And if this individual needed to elevate his leg straight out
> while seated, would that impact his ability to perform his
> past work?
>
> A. Yes, Your Honor. He would not be able to do so.

TR 42-43.

Contrary to Plaintiff's assertion, the VE's testimony indicates that work as security guard

as it is generally performed does not preclude Plaintiff from changing positions every 30

minutes. In fact, the DOT includes the following description of Plaintiff's past relevant work:

> 372.667-038 MERCHANT PATROLLER (business ser.) alternate
> titles: doorshaker; guard; security guard
>
> Patrols assigned territory to protect persons or property: Tours

29

buildings and property of clients, examining doors, windows, and gates to assure they are secured. Inspects premises for such irregularities as signs of intrusion and interruption of utility service. Inspects burglar alarm and fire extinguisher sprinkler systems to ascertain they are set to operate. Stands guard during counting of daily cash receipts. Answers alarms and investigates disturbances [ALARM INVESTIGATOR (business ser.)]. Apprehends unauthorized persons. Writes reports of irregularities. May call headquarters at regular intervals, using telephone or portable radio transmitter. May be armed with pistol and be uniformed. May check workers' packages and vehicles entering and leaving premises.

DOT Code 372.667-038.

While there is no specific provision in this job description that Plaintiff may change positions every 30 minutes, a plain reading of the above does not indicate that Plaintiff would be precluded from altering positions as needed. *See id.* This plain reading is consistent with the VE's testimony that Plaintiff would be able to perform this type of work despite the functional limitations that the ALJ imposed. Plaintiff does not meet his burden to prove that the restrictions that the ALJ imposed prevent him from being able to return to his past relevant work as it is generally performed.

Moreover, Plaintiff's contention that this work precludes him from elevating his leg straight out for 30 minutes at a time is unpersuasive. Although the VE testified that this limitation would preclude Plaintiff from returning to his past relevant work (TR 43), the ALJ did not determine that this limitation was credible (*see* TR 14-16). As explained above, this determination was proper. Accordingly, Plaintiff's argument fails.

**8. Vocational Expert Testimony**

Plaintiff contends that the ALJ erred in relying on testimony from the VE. Docket No.

12-1.  Specifically, Plaintiff argues that the VE's testimony is unreliable because the ALJ failed to mention his limited intellectual functioning, subjective complaints, mental condition/limitations, and obesity when posing hypothetical questions to the VE.[9]  *Id.*  Plaintiff highlighted that the VE testified that he would not be able to perform his past relevant work if he had to elevate his leg while seated.  *Id.*

Defendant responds that the Regulations specifically provide for a VE to offer relevant evidence for the purpose of determining whether Plaintiff can return to his past relevant work. Docket No. 15, *citing, e.g.*, 20 CFR § 404.1560(b)(2).  Defendant maintains that the ALJ properly solicited and relied on testimony from the VE in accordance with Plaintiff's age, education, work experience, and RFC.  *Id.*

Defendant is correct that the Regulations specifically provide for a VE to offer expert opinion testimony regarding Plaintiff's ability to return to his past relevant work. 20 CFR §§ 404.1560(b)(2), and 416.960(b)(2).  In the case at bar, the ALJ posed the following hypothetical questions to the VE:

> Q:    Could I ask you to base your testimony on the Social Security regulations and the Dictionary of Occupational Titles, and if at any time your testimony is not consistent with the Dictionary of Occupational Titles, if you'll please note that and give us the basis of your opinion?

> A.    Yes, Your Honor. [Plaintiff has] worked as a security guard since '88 to 2007; DOT code 372.667-038; light, low semi-skilled, SVP of three, no transferability.

---

[9]Plaintiff reiterates his argument here that Dr. Junior's opinion should be given controlling weight.  Docket No. 12-1.  This argument was addressed previously, and the undersigned will not revisit it here.

31

Q.      I'm going to ask you to assume a hypothetical person of [Plaintiff's] age, education, and work background; and further assume that he has no lifting restrictions; that he can sit, stand or work for six hours each in an eight-hour workday, but he would need to be able to change positions at will every 30 minutes. Could such an individual perform any of his past work?

A.      Yes, Your Honor. He should be able to return to his, the work as a security guard.

Q.      Are there other jobs?

A.      Yes, Your Honor. There would be other light jobs. Some examples of those would be counter clerks, DOT code 249.366-010; approximately 7,500 in Tennessee, 440,000 U.S.A. at large. There would be cashiers, DOT code 211.462-010; approximately 70,000 in Tennessee, and over 3,000,000 U.S.A. at large. There would also be order fillers, DOT code 209.587-034; approximately 30,000 in Tennessee, close to 1,000,000 U.S.A. at large.

Q.      And if this individual needed to elevate his leg straight out while seated, would that impact his ability to perform his past work?

A.      Yes, Your Honor. He would not be able to do so.

. . .

Q.      So, Ms. Brenton, if an individual of the claimant's age, education and work background were limited to simple and detailed tasks, would that allow him to perform his past work?

A.      Yes, Your Honor.

TR 42-44.

As can be seen, the ALJ included the mental and physical functional limitations that he found credible, including Plaintiff's standing, positional, and mental limitations. When posing hypothetical questions to a VE, the law is well-settled that an ALJ need only include the claimant's impairments she found credible. *See, e.g., Webb v. Commissioner*, 368 F.3d 629, 631-33 (6th Cir. 2004); *Cline v. Shalala*, 96 F.3d 146, 150 (6th Cir. 1996); *Stanley v. Secretary*, 39 F.3d 115, 118-19 (6th Cir. 1994); *Blancha v. Secretary*, 927 F.2d 228, 231 (6th Cir. 1994). As discussed above, the ALJ did not find Plaintiff's subjective complaints, obesity, and certain mental limitations credible. Accordingly, the ALJ was not bound to include these limitations in the hypothetical questions she posed to the VE. Because the ALJ's hypothetical questions accurately represented Plaintiff's impairments that the ALJ found credible, the ALJ properly relied on the VE's testimony to prove the existence of a significant number of jobs in the national economy that Plaintiff could perform, including his past relevant work. *See Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994); *Hardaway v. Secretary*, 823 F.2d 922, 927-928 (6th Cir. 1987); and *Varley*, 820 F.2d at 779. Plaintiff's argument fails.

**9. Reliance on the Grid**

Plaintiff repeatedly contends that the ALJ erred in not finding him disabled under the Medical-Vocational Guidelines ("the Grid"). Docket No. 12-1. Specifically, Plaintiff argues that, even if he could perform a full range of light work, his limited education and age would nevertheless necessitate finding him disabled. *Id.* Plaintiff relies of 20 CFR Part 404, Subpt. P, App. 2, § 202.02.[10] *Id.*

_____

[10]This citation does not exist as part of the Regulations, rather 20 CFR Part 404, Subpt. P., App. 2, §202.00 addresses "Maximum sustained work capability limited to light work as a result of severe medically determinable impairment(s)." *See* 20 CFR Part 404, Subpt. P., App. 2,

33

Defendant does not specifically respond to Plaintiff's contentions on this point. Docket No. 15.

For every disability determination, the ALJ must follow the five-step evaluation process set forth in the Regulations as explained above. If at any step in steps one through four, the ALJ concludes that the claimant is or is not disabled, the ALJ does not move on to the next step. *See* 20 CFR 404.1520(a)(4). At step four, the ALJ determines whether the claimant could return to a previous job in light of the determined RFC. Specifically, the Regulations state:

> Your impairment(s) must prevent you from doing your past relevant work. If we cannot make a determination or decision at the first three steps of the sequential evaluation process, we will continue our residual functional capacity assessment, which we made under paragraph (e) of this section, with the physical and mental demands of your past relevant work (See 404.1560(b)). *If you can still do this kind of work, we will find that you are not disabled.*

20 CFR § 404.1520(f) (emphasis added).

The Regulations also explicitly provide:

> If we find that you have the residual functional capacity to do your past relevant work, we will determine that you can still do you past work and are not disabled. We will not consider your vocational factors of age, education, and work experience or whether your past relevant work exists in significant numbers in the national economy.

20 CFR §§ 404.1560(b)(3) and 416.960(b)(3).

Sixth Circuit decisions have interpreted the Regulations in accordance with their plain

---

§ 202.00.

meaning. In *Smith v. Secretary*, 893 F.2d 106, 109-10 (6th Cir. 1989), the court held that a claimant has the burden of proving an inability to perform past relevant work or proving that a particular past job should not be considered relevant. A claimant who fails to carry this burden must be denied disability benefits even if the claimant would receive a favorable decision under the Grid regulations. Further, vocational factors such as age, education, and work experience, are not considered at step four. *Garcia v. Secretary*, 46 F.3d 552, 554 (6th Cir. 1995). *See also Fetters v. Commissioner*, 160 Fed. Appx. 462, 463 (6th Cir. 2005) ("Use of the Grids is not required at step four of the five-step sequential process . . .").

As described above, Plaintiff did not meet his burden of proving that he could no longer perform his past relevant work, and the ALJ properly determined that Plaintiff could, in fact, do so. *See* TR 16. Because the ALJ properly determined that Plaintiff could return to his past relevant work at step four of the sequential evaluation process, the disability inquiry ends there and does not progress to analysis under the Grid. *See* 20 CFR 404.1520(f). Therefore, Plaintiff's argument fails.

## IV. RECOMMENDATION

For the reasons discussed above, the undersigned recommends that Plaintiff's Motion for Judgment on the Administrative Record be DENIED, and that the decision of the Commissioner be AFFIRMED.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any

response to said objections. Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L. Ed. 2d 435 (1985), *reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

E. CLIFTON KNOWLES
United States Magistrate Judge

36